WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dennis M. Treon, *et al.*, | No. CV-20-00529-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| Aetna Life Insurance Company, *et al.*, | |
| Defendants. | |

At issue is Plaintiffs' Motion to Remand (Doc. 11, Mot.), to which Defendant Aetna Life Insurance Company filed a Response (Doc. 12, Resp.) and Plaintiffs filed a Reply (Doc. 15, Reply). For the following reasons, the Court denies Plaintiffs' Motion.

**I.   BACKGROUND**

Plaintiff Dennis Treon, a special needs teacher with the Washington Elementary School District, was enrolled with the school district's insurance policy program with Defendant. (Doc. 1 Ex. B, Compl. ¶ 3.) On or around September 20, 2016, Dennis began experiencing the onset of the medical condition Polymyalgia Rheumatica (PMR). Among other things, Dennis experienced loss of strength and muscle, severe pain, and swelling throughout his body. Activities of daily living, including walking and standing up, became very difficult. (Compl. ¶¶ 4–5.) He began seeking medical attention for his condition in October 2016. On November 10, Dennis's physician sent a medical report to Defendant indicating he did not expect to see improvement in Dennis until at least January 10, 2017—a date that was later extended to January 18 following another appointment with Dennis.

(Compl. ¶ 8.) Dennis also met with a rheumatologist for the first time on November 29, who prescribed him a schedule of medication. (Compl. ¶ 7.)

The Complaint alleges that as a result of the PMR, Dennis was rendered totally disabled and, accordingly, filed for short-term disability benefits with Defendant. On December 6, 2016, Defendant approved Dennis to receive benefits, but approved payments only through November 30, after determining he should have been able to return to work by November 30. (Compl. ¶ 8.) Thus, Defendant terminated Dennis's short-term benefits as of November 30. Over the ensuing months, Dennis's doctors sent Defendant documentation recommending Dennis not return to work until May 2017 by some accounts, and September 2017 by others. (Compl. ¶¶ 11–12.)

Dennis made a claim to Defendant for reinstatement of his benefits and went through a series of appeals, all of which were denied. Defendant issued its final decision denying benefits on March 5, 2018. (Compl. ¶ 13.)

Dennis and his wife, Janie Treon, filed the present action in the Superior Court of Maricopa County, alleging breach of contract and insurance bad faith claims against Defendant. (Compl. ¶ 16.) The Complaint seeks contract damages in the amount of $24,170.47, plus interest; tort damages for emotional distress, humiliation, inconvenience, and anxiety; attorneys' fees and costs and "other tort damages as allowed by law;" and damages to Janie resulting from loss of consortium caused by Defendant's tortious conduct. (Compl. ¶ 17.)

Defendant removed the case to this court on diversity grounds. (Doc. 1 at 2.) Plaintiffs' present Motion to Remand followed.

## II. LEGAL STANDARD

Federal courts may exercise removal jurisdiction over a case only if subject matter jurisdiction exists. 28 U.S.C. § 1441(a); *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1116 (9th Cir. 2004). Federal courts have diversity jurisdiction over actions between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). The Supreme Court has concluded that, under § 1446(a), a

"notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014). "Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.* "[D]iversity jurisdiction is determined at the time the action commences, and a federal court is not divested of jurisdiction . . . if the amount in controversy subsequently drops below the minimum jurisdictional level." *Hill v. Blind Indus. & Servs of Md.*, 179 F.3d 754, 757 (9th Cir. 1999).

When a defendant's assertion of the amount in controversy is challenged, then "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee Basin*, 135 S. Ct. at 554; *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir.1996) ("[T]he defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount.").

The Ninth Circuit has noted that the Supreme Court did not decide the procedure for each side to submit proof, leaving district courts to set such procedure. *See Ibarra v. Manheim Inv.*, 775 F.3d 1193, 1199–1200 (9th Cir. 2015) (citing *Dart Cherokee Basin*, 135 S. Ct. at 554). In assessing the amount in controversy, a court may consider allegations in the complaint and in the notice of removal, as well as summary-judgment-type evidence relevant to the amount in controversy. *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018). And while a damages assessment may require "a chain of reasoning that includes assumptions, . . . those assumptions cannot be pulled from thin air but need some reasonable ground underlying them." *Ibarra v. Manheim Inv.*, 775 F.3d 1193, 1199–1200 (9th Cir. 2015). Thus, a court may consider, *inter alia*, evidence of jury awards or judgments in similarly situated cases, settlement letters, affidavits, and declarations. *See, e.g.*, *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002); *Ansley v. Metro. Life Ins. Co.*, 215 F.R.D. 575, 578 & n.4 (D. Ariz. 2003).

### III. ANALYSIS

The parties do not dispute that complete diversity exists. (Mot. at 1; Resp. at 3–4.) The issue presented is whether the amount in controversy exceeds $75,000, excluding interest and costs. *See* § 1332(a). Defendant asserts it can get to over $75,000 a number of different ways. The Court will address the kinds of damages and fees requested in the Complaint in turn.

#### A. Contract Damages

Plaintiffs seek $24,170 for alleged breach of contract damages stemming from Defendant's denial of Dennis's short-term disability benefits. This sum represents two-thirds of the balance of his salary for the 2016-2017 school year, which was the contracted rate of reimbursement of benefits under the policy. (Compl. ¶ 14.) Defendant does not dispute the amount of $24,170 as the alleged breach of contract damages. Accordingly, the Court accepts this figure for purposes of resolving the present Motion.

#### B. Tort Damages

Defendant makes several arguments regarding the amount of tort damages at stake in this litigation. First, Defendant contends the tort damages alleged are at least $49,019. The basis for this figure is a sentence in the body of Plaintiffs' Complaint that states, "As a result of his illness and Defendant's breach of its contract, Dennis was not able to seek a new contract for the school year 2017-2018 despite having been tendered a contract by the Washington Elementary School District and therefore retired." (Compl. ¶ 15.) Because Dennis's yearly contract was for a salary of $49,019, Defendant argues this amount can be taken into account when assessing the amount in controversy. (Resp. at 11.)

Although the Court is not entirely clear at this juncture why Plaintiffs included that sentence in the Complaint, it is satisfied that Plaintiffs are not seeking the value of Dennis's 2017-2018 contract as tort damages. First, Plaintiffs expressly say so in their Motion and Reply. (*See* Mot. at 5 n.1; Reply at 3 n.2.) Second, Plaintiffs did not list lost income in their prayer for relief in the Complaint, nor allege a claim of tortious interference with business relations against Defendant. Accordingly, the Court rejects Defendant's argument that tort

damages of $49,019—representing the value of Dennis's contract for the 2017-2018 school year—can presumptively be added to the $24,170 contract damages.

Second, Defendant argues Plaintiffs are seeking at least $25,830 in tort damages—or at least $50,000 in contract and tort damages combined—because Plaintiffs certified in state court that the amount in controversy exceeds $50,000. More specifically, Plaintiffs signed and filed a Certificate Re: Compulsory Arbitration in which they avowed they were seeking an award of at least $50,000, excluding attorneys' fees. (Doc. 1 Ex. B at 12.) *See also* Ariz. R. Civ. P. 72(b); A.R.S. Super. Ct. Local Prac. Rules, Maricopa County, Rule 3.10.

Courts in this district consistently find for purposes of resolving a motion to remand that a plaintiff's certificate regarding compulsory arbitration sufficiently establishes an amount in controversy of at least $50,000, exclusive of attorneys' fees. *See, e.g.*, *Welsh v. New Hampshire Ins. Co.*, 843 F. Supp. 2d 1006, 1009 (D. Ariz. 2012); *Dukes v. Twin City Fire Ins. Co.*, No. CV-09-2197-PHX-NVW, 2010 WL 94109, at *2 (D. Ariz. Jan. 6, 2010). The Court likewise accepts this argument. However, this demonstrates only that the contract and tort damages at stake are at least $50,000. Defendant must show by a preponderance of the evidence that the remaining damages and fees exceed $25,000, bringing the total amount in controversy to over $75,000. As articulated below, the Court finds Defendant has met this burden.

Defendant next argues the tort damages at stake are likely significant because "Arizona bad faith verdicts tend to exceed $75,000, even in cases where there are no policy benefits at issue and cases where there is no physical injury at issue." (Resp. at 11.) Defendant cites insurance bad faith cases involving contract damages close to those at issue here, but with large accompanying tort damage awards. For example, in *McClure v. Country Life Ins. Co.*, 326 F. Supp. 3d 934 (D. Ariz. 2018), a jury awarded the plaintiff $23,469.35 in contract damages, representing the policy benefits, and $1,290,000 for emotional distress, humiliation, inconvenience, and anxiety stemming from the insurer's bad faith. In *Hunton v. Am. Zurich Ins. Co.*, No. 2:16-CV-00539-PHX-DLR (D. Ariz. Apr.

17, 2018), a bad faith insurance case in the workers' compensation arena, a jury awarded the plaintiff $250,000 for emotional distress, pain, discomfort, humiliation, inconvenience, and anxiety. Like the *McClure* and *Hunton* plaintiffs, Plaintiffs here claim damages from emotional distress, humiliation, inconvenience, and anxiety. (Compl. ¶ 17.)

Defendant lists several other bad faith cases in which the plaintiffs were ultimately awarded tort damages that equaled many multiples of the underlying contract damages. *See, e.g.*, *Leavey v. UnumProvident Corp.*, No. CV–02–2281–PHX–SMM, 2006 WL 1515999 (May 26, 2006) (jury awarded $809,028 in policy benefits and $4,000,000 in mental, emotional, and physical pain and suffering compensatory damages). Here, a tort damages award of just two times the alleged contract damages would push the amount in controversy to approximately $72,500, *excluding* attorneys' fees. In the Court's experience, an award of tort damages at least twice the amount of contract damages is a reasonable estimate for determining the amount in controversy in an insurance bad faith case. More importantly, however, is that Plaintiffs did not address or rebut Defendant's argument on this point. Nor did Plaintiffs show the unlikelihood of such a ratio of tort to contract damages by, for example, citing to similar cases with more modest tort damage awards.

Accordingly, the Court finds Defendant has met its burden to show the tort damages at stake in this litigation, together with the contract damages, more likely than not exceed $75,000. Any amount short of $75,000 would be easily made up by Plaintiffs' attorneys' fees at stake, as described below.

### C. Attorneys' Fees

Attorneys' fees are included in computing the amount in controversy where an underlying statute or contract authorizes an award. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). The Ninth Circuit also recently held that the *total* amount of attorneys' fees at stake are included in the calculation. *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018). In other words, it is no longer true that only those fees incurred at the time of removal are considered. All fees, including future

attorneys' fees recoverable by statute or contract, are contemplated when assessing the amount in controversy. *Id.*

Arizona law authorizes a discretionary award of reasonable attorneys' fees in contract actions and for related bad faith claims. A.R.S. § 12-341.01; *Sparks v. Republic Nat'l Life Ins. Co.*, 647 P.2d 1127, 1142 (Ariz. 1982). Courts typically use the lodestar amount—the number of hours spent on a case times the attorney's hourly rate—to determine reasonable fees. *See Lange v. Penn Mut. Life Ins. Co.*, 843 F.2d 1175, 1184 (9th Cir. 1988). Here, Defendant submitted a declaration and detailed estimates of the range of rates an attorney of Plaintiffs' counsel's experience and expertise charge in Phoenix in insurance bad faith actions. (*See* Resp. 8–9.) In citing myriad cases involving similar claims, Defendant estimates Plaintiff's counsel's hourly rate is approximately $375 to $425 per hour. Using those rates, Defendant projects Plaintiffs' counsel would reach $25,000 in fees with approximately 59 to 67 hours of work.

In reply, Plaintiffs' counsel did not disclose his rates or take issue with the numerical estimates provided by Defendants. Rather, he contends that such estimates are "*ipse dixit* and not competent proof." (Reply at 7.) However, in estimating future attorneys' fees, district courts "may rely on their own knowledge of customary rates and their experience concerning reasonable and proper fees." *Fritsch*, 899 F.3d at 795. Even utilizing a lower hourly rate, the Court, in its experience, finds that the number of hours Plaintiffs' counsel will expend in litigating this case will more likely than not push the total amount in controversy over $75,000, especially accounting for the alleged contract damages and the tort damages described in the preceding sections.

In either event, Plaintiffs essentially concede that counsel had already incurred up to $10,000 in fees by the time of removal. (Mot. at 3.) As the Court noted above, Defendant met its burden in showing that collectively, the tort and contract damages are likely at least $72,150 (representing the undisputed alleged contract damages and two times those for tort damages). Adding in Plaintiffs' counsel's *already incurred* fees of $10,000 comfortably pushes the amount in controversy over the jurisdictional threshold.

**IT IS THEREFORE ORDERED** denying Plaintiffs' Motion to Remand (Doc. 11).

Dated this 19th day of May, 2020.

_____
Honorable John J. Tuchi
United States District Judge